Oldham J., delivered the opinion of the court. Blackburn, as the guardian of William Burton, a minor under the age of twenty-one years, and son and one of the testamentary legatees of Alexander Burton deceased, filed his petition in the probate court of Pulaski county, against Hawkins, as administrator with the will annexed of said Alexander, setting forth that the' said William was about the age of nineteen years, that he was of feeble constitution and infirm health, that William Bronaugh, who had intermarried with the mother of said William, had wholly .supported him since the 31st Dec., 1839, up to the 31st Dec., 1842, ¡and had rendered an account for the same of five hundred and twenty dollars, and that there were in the hands of said administrator about four thousand dollars belonging to the estate for which he was charged with interest by order of the court, concluding with a prayer that the court would authorize and order said administrator to pay over, to said guardian,' such sum as should seem just, upon hearing testimony, for the purpose of re-imbursing said Bronaugh, and a further order for a certain yearly sum fpr the support, maintenance and education ,of said ward. Hawkins, in his answer to the petition, sets up, by way of defence,' that by the will of Alexander deceased, two thirds of his estate were to vest in said William when he became twenty-one years of age, that he was then but eighteen, and that by a further provision, it was provided that n.o advancement, whatever, was to be made to said William until he became twenty-one years, that the will also provided that said Williarp should be bound' put until he became of .age, by the executors pf the will; that the executors appointed in the will declining to act, letters testamentary with the will annexed, were granted to respondent. That such being the prpvi? sions of the will and respondent having used all the means in his power to execute that provision requiring the said William to be bound out, and being unable to accomplish it, because he remained beyond the limits of the State'in 'Missouri and Texas, until a few weeks before the filing of the petition, the' respondent deemed himself wholly unauthorized to advance any sum- whatever to the support of said minor. The answer also contains other matter not necessary for the determination of the case. ■ The will, which is referred to by both the petitioner'and respondent, and prayed respectively to be taken as a part of the petition and answer, as an exhibit, is copied into the bill of exceptions and forms part of the record in the cause, and contains, among other things, the following provisions: “In the first place, I give and bequeath to my son William, who now resides in the State of Missouri, two-thirds of my whole estate after the payment of my just debts and liabilities, and it is my will that my said estate remain in the hands of my executors, hereafter appointed, until my said son arrives at the age of twenty-one years, when my executors .are to have said estate valued by two or more discreet, disinterested persons, and two-thirds of said estate delivered over to my said son William, giving him his proportionable share of the real and personal estate.” The will also contained a provision that said William should be bound to some sober and industrious mechanic to learn a trade, and, also, that no advancement be made to him, whatever, until he became twenty-one years of age. The said William Burton was introduced as a witness, and stat, ed that, since the year 1839, be had lived with said Bronaugh, who had maintained him and sent him to school about four months, for which he thought $150 a year would be a just compensation; that, upon going to Texas to live with Bronaugh, he received from him some clothes and about seventy dollars to ’defray his expenses from Missouri to Texas; that he had been - unwell and sickly for some' time, and unable to learn a trade: that he had been put in a printing office at Houston, but after about four weeks had to.quit it on account of sickness. Some other statements were’ made by him, which, together with some letters having no particular bear,. ing on the case, was all the evidence introduced. Thereupon the probate court decreed that the administrator pay over to the guardian the sum of $463 9-100 dollars, being the amount of interest on two-thirds of the estate to the first day of March, 1843, as ascertained by the court, at a previous day of the term, to have accumulated in the hands of the administrator wjth the will annexed, with a direction to the guardian for its application. From this, the administrator appealed to the circuit court, where the decree of the probate court was reversed; and to reverse the judgment of the circuit court, the guardian has prosecuted his appeal to this court. The first inquiry, which presents itself for the consideration of the court, is as to the nature and character of the interest acquired by the legatee by virtue of the will of the testator. The doctrine of vested and contingent legacies was fully and ably argued •by counsel and definitely declared by the court in Moody vs. Walker, 3 Ark. R. 147. In the elaborate opinion of the court in that case, the authorities were so completely explored, and the principles so clearly developed, as to the nature of the interest acquired by virtue of such a bequest as contained in the will of Alexander Burton deceased, and the opinion being so well fortified by the authorities, that we deem it wholly a work of supererogation to discuss the question on this occasion. It was there held by the court that "if a legacy be given to a devisee, and no time of payment be expressed in the will, or if it be directed to be paid at twenty-one, and he die before that age, the legacy will vest in the mean time, subject to be divested in the event of his dying under the age of twenty-one.” The direction, that the legacy be paid on the arrival of the legatee at a certain age, relates only to the payment, and not to the time when the interest shall vest. Fonereau vs. Fonereau, 3 Atk. 645. It is a rule, recognized in all the cases upon this subject, that a legacy, given out of a personal estate, payable at a particular time, and interest in the mean time, is a vested legacy.” The language of the bequest in the case of Moody vs. Walker, is “I give and bequeath to my son, Thomas Walker, my negro boy Billy. Item-, I give and bequeath to my daughter Nancy Walker, my negro girl Sarah. It is my'desire that after the death of my wife, all the personal estate I have but her with the increase-thereof, be equally divided between my son Thomas Walker and my daughter Nancy, and if either the said Thomas or Nancy Walker die before they arrive at lawful age, or without heir lawfully begotten of their body, that the surviving one have that part of my estate bequeathed to the deceased one.” This bequest the court decided conveyed a vested legacy. The application of these principles will determine the nature and' character of the interest acquired by William Burton, under the-bequest contained in the will of his father. The language of the bequest is, “In the first place I give and bequeath to my son William, who now resides in the State of Missouri and county of Ralls, (as I am informed) two-thirds of my whole estate after the payment of all my just debts' and liabilities,” and further that “the estate remain in the hands of my said executors hereinafter appointed until my said son arrives at the age of twenty-one years:” And in a subsequent part of the will, .that the son and the other legatee named in the will “be bound to some sober and industrious mechanic to learn a trade,” and “that no advancement whatever be made to them until they become respectively twenty-one years of age.” The language of this bequest comes strictly and literally in the rule above laid down, and leaves no ground for debate, as to the nature of the interest granted by it. It is a vested legacy, directed by the testator to be paid to the legatee, upon his arrival at the age of twenty-one years. Two-thirds of the estate are given by the express words “1 give and bequeath,” which create a vested legacy. Having disposed of this preliminary question, it remains to he determined, whether, under the facts as presented by the record, the probate court was warranted in decreeing a necessary sum to discharge the debt due for the necessary support of the minor, and to provide for his future support, while remaining in his sickly and feeble condition, in contravention of the express declaration contained in the will. We hold it to be the correct doctrine that, if it be possible to carry into effect the object and intention of the testator, it should be done. The testator declares his wish that his son should be bound out to some sober and industrious mechanic to learn a trade, and in this connection, prohibits any advancement whatever to be made to him, until his arrival to the age of twenty-one years. In this we can perceive no .great hardship, but rather' the exercise of parental prudence. He desired that his son should learn a trade, by which he might bo enabled to earn a livelihood*, in case he should, at any time, be deprived of his property by unforeseen or fortuitous circumstances. He expected that the services, to be rendered by his son, as an apprentice, would procure for him the necessary support, maintenance and education — all advancement was prohibited that he might be exempt from the temptations, vices, follies and dissipations incident to the indiscretions of youth, and into which money would be likely to lead him. But did the testator anticipate the circumstances that now present themselves? Did he anticipate that his son would become so sickly and feeble, that he would be unable to leárn a trade? Did he imagine that his son, for whom lie was making such ample provision, npon attaining his majority, would likely become either a public pauper or a burthen to his friends? We unhesitatingly conclude that a state of facts now exists, which never entered into1 the conception of the testator. This court cannot presume that, had. the father- foreseen the present situation of his son, that he would have thus left his child, whom he was bound by every dictate of reason, morals and humanity to support and maintain,thus destitute — an object of public or private charity until his arrival to full age. Then, can the probate court, possessing the powers of the chancello!' over minors and the estates of deceased persons, interfere and make provision for the support of the legatee, during his minority, out of the legacy thus bequeathed to him? Will the court make that provision for the child, which nature and the laws of the land impose upon the parent, and which we have every reason to believe he would have done, had he anticipated the circumstances which now exist? It is with peculiar pleasure that we adopt the language of that able and luminous commentator on American Law, Chancellor KeNt, declaring the obligation of parents to maintain their children. He says “the wants and weaknesses of children render it necessary that some person maintain them, and the voice of nature has pointed out the parent as the most fit and proper person.- The laws and customs of all nations have enforced this plain preóep’t of universal law. *' * The obligation on the part of the parent to maintain his child continues until the latter is in a condition to provide for. his own maintenance, and it extends no further than to necessary support. ' The obligation of parental duty is so well secured by the strength of natural affection that it seldom requires to be enforced by human laws: according to the language of Lord Coke “it is nature’s profession to assist, maintain and console the child.” In the intenseness, the lively touches and unsubdued nature of parental a.flection we discern the wisdom and goodness of the great author of our being and Father of mercies.” 2 Kent’s Com. 189, 190. In 1 Black. Com. 447, this natural duty resting upon the parent' to support the child is equally defined and enforced. In Van Valkenburg vs. Watson & Watson, 16 John R. 281, 5, Chief Justice Spencer says, “the duty of a parent to maintain his offspring until they attain the age of maturity is a perfect common law duty:” so it is said by the court in Edwards & wife vs. Davis, 13 John. R. 480, “a parent is under a natural obligation to furnish necessaries fo'r his infant children, and if the parent neglect that duty, any other person, who supplies such necessaries, is deemed to have conferred a benefit to the delinquent parent, for which the law raises an implied promise to pay on the part of the parent.” Such are the obligations resting upon parents, while living, to pro-' vide for their offspring. Does this obligation cease upon the death of the parent? And shall he, who is bound to support his children in his life time, be privileged by his will to make a disposition of his property to be paid to his children when they arrive at a certain age, arid leave them, in the intermediate time,- the subjects of public or private charity? If a testator bequeath a legacy to his child, to be paid upon his arrfval at the age of twenty-one years, the court will not postpone the payment of interest even till then, but will order it immedb ately; since, by the law of nature, he was obliged to provide, not only for the future, but the present maintenance of his child, and shall not be presumed to have left him destitute. Toller's Law of Executors, 325. Butler vs. Butler, 3 Ark. Heath vs. Perry, id. 102. Chambers vs. Goodwin, 11 Vesey 1. Mitchell vs. Bower, 3 Ves. 282. Lufton vs. Lvfton, 2 John. Ch. R. 628. Van Bramer vs. Hoffman, 2 John. Cases 200: and in Cricket vs. Dalby, 3 Vesey 12, the Master of the Rolls said that, if a father by w'ill gives his natural child a portion payable at twenty-one, the court will not say it was intended to starve in the mean time, but will allow maintenance. It is not correct, as argued by the counsel for .the appellee, that the testator made a provision for the ward during his minority. He desired that he should be bound'out to learn a trade, thus throw* ing- him upon his natural resources. He made no provision, whatever, out of another fund: and we are bound to presume that, had he foreseen the present situation of' his son, he would not have directed him to.be bound out to learn a trade, which is precluded by the state of his health and feeble constitution, and that no advancement whatever be made to him, but would have made the necessary provision for his support and maintenance. Let us ask, who will derive any benefit from this strict adherence to the letter of the devise? And who will be injured by directing the amount petitioned for by the guardian to be paid him to re-imburse Bro-naugh for necessaries furnished the legatee, and for the support of the legatee during his present sickly and enfeebled condition? Of course not the legatee. His situation required the expenditures made for his benefit,, and they seem" reasonable and just; and in making the decree, we are only anticipating what will come- to him in some two or three years by the express provisions of the will; we are but drawing upon a fund held in trust for his use. We believe, therefore, that the application made to the probate court was founded in reason and justice, and enforced by the purest principles of humanity. It is the opinion of this court that the circuit court erred in reversing the judgment and- decree of the probate court. The judgment of the circuit court is therefore reversed.